Lauren Valente (LV0380)
*lauren@valente.law*
VALENTE LLC
1121 Old Walt Whitman Rd., Suite 200
Melville, NY 11747
Telephone: (516) 384-4097
Attorneys for Plaintiffs
*Ruben Rojas, Inc.* and
*Ruben Rojas, Individually*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RUBEN ROJAS INC. and RUBEN ROJAS,
Individually,
*Plaintiffs*

v.

OOSHIRTS INC. d/b/a TEECHIP,
OOSHIRTS EXPORTS INC., LITTLE
RAYMOND'S PRINT SHOP INC.,
LITTLE RAYMOND'S EXPORTS INC.,
CHIP, INC., and RAYMOND LEI,
Individually, and JOHN DOE,
*Defendants.*

**Civil Action No**.

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

Plaintiff Ruben Rojas Inc. ("Rojas Inc."), a corporation organized and existing under the laws of the State of California, and Ruben Rojas ("Rojas"), an individual residing in the State of California (collectively, "Plaintiffs") by and through their undersigned counsel, alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil action for copyright infringement and related claims of Plaintiffs federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*.; counterfeiting of Plaintiffs federally registered trademarks in violation of 15 U.S.C. §§

1114(1)(a)-(b), 1116(d), and 1117(b)-(c); trademark infringement of Plaintiffs federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham Act), 15 U.S.C. §§ 1051 *et seq.*; and false designation of origin and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (the "Action"), arising from the infringement of the Rojas IP (as defined *infra*) by Defendants ooShirts Inc. d/b/a Teechip ("Teechip"), ooShirts Exports Inc. ("ooShirts Exports"), Little Raymond's Print Shop Inc. ("Raymond's Print"), Little Raymond's Exports Inc. ("Raymond's Exports"), Chip, Inc. ("Chip") and Raymond Lei, individually ("Lei") (jointly, the "Defendants") through its, among other things, manufacturing, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of infringing and/or counterfeit versions of the Rojas Products (defined *infra*). Plaintiffs seek injunctive relief, an accounting, compensatory damages and/or statutory damages, treble damages, attorneys' fees and costs, and such other relief as the Court deems proper.

## JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Copyright Act, 17 U.S.C. §§ 101 et seq. and the Lanham Act, 15 U.S.C. §§ 1051 et seq.; pursuant to 28 U.S.C. § 1338(b) as an action arising out of claims for false designations of origin and unfair competition.

3.     Venue is proper, *inter alia*, pursuant to U.S.C. §1391 because Defendants conduct business in this district and, upon information and belief, a substantial part of the events or omissions giving rise to claims occurred in this district,  and has caused damage to Plaintiffs in this district.

4.      Personal jurisdiction exists over Defendants because upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this district, supply goods (including, on information and belief, Infringing Products, as defined *infra*) and services to consumers in New York and in this district, derive substantial revenue from their business transactions in New York and in this district, and/or otherwise avails itself of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

## THE PARTIES

5.      Ruben Rojas, Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business at 2627 Highland Avenue, Apt 4, Santa Monica, CA 90405.

6.      Ruben Rojas, is an individual residing at 2627 Highland Avenue, Apt, Santa Monica, CA 90405.

7.      Upon information and belief, TeeChip is a corporation organized and existing under the laws of the State of California, with its principal place of business at 39899 Balentine Drive, Suite 220, Newark, CA 94650.

8.      Upon information and belief, ooShirts Exports is a corporation organized and existing under the laws of the State of California, with its principal place of business at 39899 Balentine Drive, Suite 220, Fremont, CA 94650.

9.      Raymond's Print is a corporation organized and existing under the laws of the State of California, with its principal place of business at 41454 Christy Street, Fremont, CA 94538.

10.     Raymond's Exports is a corporation organized and existing under the laws of the State of California, with its principal place of business at 2020 Milvia Street, Suite 200, Berkeley, CA 94704.

11.     Upon information and belief, Chip, Inc. is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business at 2900 Shadeland Avenue, Suite B1, Indianapolis, IN 46219.

12.     Upon information and belief, Raymond Lei ("Lei") is an individual residing at 10035 Byrne Avenue Cupertino, California 95014. Upon information and belief, Lei is the principal and/or Chief Executive Officer of Defendants TeeChip, ooShirts Exports, Raymond's Print, Raymond's Exports and Chip.

## GENERAL ALLEGATIONS

### Plaintiffs' Well-Known Intellectual Property

13.     Rojas is a widely recognized artist, muralist and activist, who produces thousands of murals and paintings across the U.S. and globally, including but not limited to the following Rojas Original Works (collectively, the "Rojas Works"): You Belong Here, LOVE, Live Through Love and You Can't Quarantine Love (the "Quarantine Love Work").

14.     The Rojas Works are viewed by millions of people in cities across the U.S. and globally every week.

15.     Rojas and the Rojas Works have received extensive national and global media coverage, including but not limited to: national newspaper articles (including the New York Times and Los Angeles Times), interviews (including ABC, FOX), TED Talks and global campaigns for brands like Range Rover, W Hotels, Westfield and American Express.

16.     In particular, Rojas' Quarantine Love Work received significant global coverage in the wake of the pandemic. Specifically, when Rojas created the Quarantine Love Work on or about March 27, 2020, he and the Quarantine Love Work immediately received extensive national media coverage including with Rojas and the Quarantine Love Work appearing in The New York Times, The Los Angeles Times, on ABC, Fox and Inside Edition.

17.     Plaintiffs are the owners of all registered and unregistered copyrights, trademarks, and other intellectual property rights in and to the Rojas Works, including, without limitation, the Quarantine Love Work, as well as all rights in and to all aspects of Rojas' expansive brand which incorporates the word "love" and his name, as used by Rojas as early as 2013 on his artwork, fashion lines, accessories line and book (collectively, "Rojas IP").

18.     Plaintiffs, through their authorized licensees, manufactures, imports, exports, advertises, markets, promotes, distributes, offers for sale and/or sells various popular consumer products featuring the Rojas IP, such as t-shirts, hoodies, sweatpants, shorts, hats, jewelry, tumblers, and stickers (collectively "Rojas Products").

19.     Plaintiffs have protected their valuable rights by filing for and obtaining U.S. copyright registrations relating to the Rojas IP. For example, Rojas is the owner of the following U.S. Copyright Registration No.: VA0002208102 covering You Can't Quarantine Love.  True and correct copies of the U.S. copyright registration and corresponding deposit materials are attached hereto as **Exhibit A** and incorporated herein by reference.

20.     Additionally, while Plaintiffs have gained significant common law trademark and other rights in the Rojas IP through its use, advertising, and promotion of the same, Plaintiffs have also sought to protect their valuable rights by filing for and obtaining federal trademark registrations. For example, Rojas Inc. owns the following U.S. Trademark Registrations Nos.:

6157978 for "LOVE." for goods in class 25 and 6073652 for "RUBEN" for goods in classes 25, 35 and 41. In addition, Rojas Inc. has the following U.S Trademark Applications pending: 88897877 for "YOU CANT QUARANTINE LOVE" for goods in classes 25 and 36, 88353137 for "LOVE" for goods in class 25, 88978856 for "LOVE" for goods in class 41, 88978855 for "LOVE" for goods in class 16, 88681134 for "LIVE THROUGH LOVE" for goods in classes 25, 35 and 41, and 90359971 for "LOVE HEART" for goods in class 25 (collectively, the "Rojas Marks"). True and correct copies of the trademark registration certificates for the Rojas Marks are attached hereto as **Exhibit B** and incorporated herein by reference.

21.     Plaintiffs have spent substantial time, money and effort in building up and developing consumer recognition, awareness, and goodwill in the Rojas Products and Rojas IP, including the Rojas Quarantine Love Work and Rojas Marks.

22.     As a result of Plaintiffs merchandising efforts, the quality of their Rojas Products, promotions, extensive press and media coverage, and word-of-mouth buzz, the Rojas Products and Rojas IP, including the Quarantine Love Work and Rojas Marks, have become prominently placed in the minds of the public. Particularly, national media for the Quarantine Love Work increased exponentially in a matter of days in March, 2020 amid the pandemic. The Rojas Products and Rojas IP, including the Quarantine Love Work and Rojas Marks, are widely published and distributed by Plaintiffs through in-person sales, studio sales, online retail store, online galleries and online commission requests, as well as through their licensees via their respective distribution channels.

23.     Members of the public have become familiar with the Rojas Products and Rojas IP, including the Quarantine Love Work and Rojas Marks, and have come to recognize the Rojas Products and Rojas IP and associate them exclusively with Plaintiffs.

24.     Plaintiffs and their Rojas Marks have acquired a valuable reputation and goodwill among the public as a result of such associations.

25.     Plaintiffs have gone to great lengths to protect their interests in and to the Rojas IP, including the Quarantine Love Work and Rojas Marks. No one other than Plaintiffs are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Rojas IP without the express permission of Plaintiffs.

**Defendants' General Business Operations**

26.     Defendants are in the business of owning, operating and managing a vast network of e-commerce platforms including, www.teechip.com ("TeeChip Website"), www.chipchip.com ("Chip Website"), www.tee4usa.com ("Tee4 Website") and www.ooShirts.com ("ooShirts Website") (collectively, the "Chip Network Websites") through which, Defendants provide "print-on-demand" consumer products – primarily t-shirts, hoodies, mugs, phone cases and posters – that are manufactured by the Defendants and then offered for sale and/or sold by Defendants ("Chip Products").

27.     Upon information and belief, Defendants, with locations in Indiana, Pennsylvania and California, own their own printing facilities and ship to over two hundred (200 countries).

28.     Upon information and belief, the TeeChip Website has been up and running since 2011.

29.     Upon information and belief, the TeeChip Website recently transitioned its entire e-commerce platform to the Chip Website on or about April 7, 2021.[1]

---

[1] According to a publicly posted letter dated April 7, 2021 from Chip's General Manager to all of its Users (defined *infra*), "the TeeChip Website remains as a marketplace for buyers, but the seller's dashboard and all communications have moved to the Chip Website." *See* http://www.chipchip.com.

30.     Defendants advertise that the Chip Network has made 1.5 billion in sales, fulfilled over $25 million products and has made 100 new millionaires in 2020 alone. *See* http://www.chipchip.com.

31.     Defendants advertise that they are "the only ecommerce platform that takes care of everything for you," "instant access to tons of products," "built-in payment processing," "fast, automated fulfillment," "Chip will handle the rest from sourcing to fulfillment," and worldwide, 24-hour "customer support included." *See* http://www.chipchip.com.

32.     Defendants advertise as the  "leading e-commerce platform for print-on-demand goods." *See* http://www.chipchip.com.

33.     Upon information and belief, Defendants solicit, encourage and/or enable third-party users ("User(s)") to initiate sale "campaigns" ("Campaign(s)") for Chip Products. When setting up a Campaign, a User uploads a design(s) to the one of the Chip Networks Websites, which are then printed onto Defendants products by Defendants own printing facilities, and then shipped by Defendants directly to consumers.

34.     Per the TeeChip and Chip Websites, all a User has to do is create a Campaign and "we [Chip Network] handle all the payment processing, fulfillment from printing to shipping, and customer service." See: http:// https://blog.chipchip.com/sell/getting-started/create-campaign.

35.     The TeeChip Website provides a "100 % quality guarantee on any item purchased from the store." *See*:  https://teechip.com/faq.

36.     At the conclusion of each Campaign, Defendant pays each User only a certain percentage of the profits generated therefrom, if in excess of $20 USD.

37.     Upon information and belief, Defendants not only manufacture, ship and handle all customer service functions, but they also will provide a free custom domain for Users to sell Chip Products and design a "Storefront" for their Users to " best showcase" Chip Products.

38.     The Users that create the Campaigns and upload designs onto the Chip Network remain anonymous to the public, as Users – whether their true name, an account name or pseudo name – are not identified anywhere on the pages for the Campaigns and Chip Products.

39.     Upon information and belief, Defendants directly advertise and/or aids, encourages and/or facilitates the advertisement and promotion of Chip products, including infringing Products (defined *infra*), by, among other things, providing Users, particularly those utilizing TeeChip's or Chip's VIP Seller programs, with certain marketing and analytic tools ( *see* https://blog.teechip.com/upsells-en/, which advertises the "comprehensive toolkit" that TeeChip offers to enable its Users to grow their sales to "the next level." and "Facebook Marketing Guides") in order to maximize sales of Chip Products, including Infringing Products (defined, *infra*) , and profits Defendants.

40.     When Users create Campaigns on the Chip Network, per their Terms of Use, Defendants are given "a worldwide, non-exclusive, perpetual, irrevocable, royalty-free, fully paid, sublicensable, and transferable license to use, reproduce, modify, create derivative works based on distribute, publicly display, and publicly perform"  the uploaded design(s) for advertising and promotional purposes, including "through the teechip.com website and through our [TeeChip's or Chip's] social media channels, such as Facebook – in a y medium and by an y means currently existing or yet to be devised."

41.     Upon information and belief, Defendants directly profit off of each and every sale of the Chip Products, including the Infringing Products (defined, *infra*).

**Defendants' Continued and Repeated Wrongful and Infringing Conduct**

42.     In light of the success of the Rojas Works, the Rojas IP, including, specifically, the Quarantine Love Work and Rojas Marks, have become targets for individuals and entities who wish to take a free ride on the goodwill, reputation and fame that Rojas has amassed in the Rojas IP, including, without limitation, the Quarantine Love Work and Rojas Marks.

43.     In or about July 2020, Plaintiffs learned of Defendants' actions, which vary and include, but are not limited to: manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling consumer products (i.e., Chip Products) beating marks and/or designs that are confusingly or substantially similar to, identical to and or constitute infringement of the Rojas IP (collectively, referred to as, "Infringing Products") to consumers in the United States (including those located in the State of New York), as well as throughout the world, through the TeeChip Website.

44.     Defendants not only manufactured, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products, but also used and/or permitted the continued use of the Rojas IP, and/or designs and/or marks that are identical thereto, in connection with the sale of such Infringing Products on the TeeChip Website (e.g., in the URLS, in the listing titles, as tags, etc.), and has permitted the continued use of the Rojas IP, and/or marks that are confusingly similar thereto, as search terms on the TeeChip Website including the unauthorized use of the Rojas' name (e.g., in the URLS, in the listing titles, as tags, etc.).

45.     Defendant currently has, and since at least since July, 2020 has had, actual knowledge of Infringing Products available on the TeeChip Website and Campaign featuring Infringing Products. For example, attached hereto as **Exhibit C** is a screenshot comprised of a sampling of Infringing Product, which was available on the TeeChip Website on or about July,

2020 to on or about October 1, 2020, along with certain promotions for the same, including the use of Rojas' name, of which Defendant had specific notice.

46.     Despite being placed on clear notice, and acknowledging the infringing activities in an email to Plaintiffs, Defendants continued to manufacture, advertise, market promote, distribute, display, offer for sale, and/or sell Infringing Products and to use and/or encourage and/or permit the use of the Rojas IP, and/or designs and/or marks that are identical thereto, on or in connection with the sale of such Infringing Products on the TeeChip Website by offering the Infringing Products for sale on a different webpage. For example, attached hereto as **Exhibit D** is a screenshot comprised of a sampling of Infringing Product, which was available on the TeeChip Website on or October 28, 2020 (after TeeChip was notified of and acknowledged the infringing activities), along with certain promotions for the same, including the use of Rojas' name, of which Defendant had specific notice. Attached hereto as **Exhibit E** is a screenshot of a sampling of Rojas' Products containing Rojas' IP as they appear on Rojas' website for sale.

47.     Defendant has continued to engage in such illegal and infringing actions as alleged herein, knowingly, and intentionally, or with reckless disregard or willful blindness to the Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of the Rojas IP.

48.     By these dealings in Infringing Products (including, but not limited to: manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products), Defendants have violated Plaintiffs' rights, and have used images, designs and/or marks that confusingly  and/or substantially similar to, identical to, and/or constitute infringement of the Rojas IP, including, without limitation, the Quarantine Love Work

and the Rojas Marks, in order to confuse consumers and aid in the promotion and sale of its Infringing Products.

49.     Prior to and contemporaneous with its unlawful actions alleged herein, Defendants had knowledge of the Rojas IP, including the Quarantine Love Work and Rojas Marks, and Plaintiffs' exclusive rights therein, as well as the goodwill associated therewith, and in bad faith adopted the Rojas IP.

50.     Defendants' illegal and infringing actions, as alleged herein, has continues to cause confusion, mistake, and deceive consumers, the public, and the trade with respect to the source or origin of Defendants' Infringing Products,  and cause consumers to erroneously believe that such Infringing Products are licensed by or otherwise associated with Plaintiffs, thereby damages Plaintiffs.

51.     Through these actions, Defendants have, among other things, willfully and in bad faith committed the following, all of which have caused and will continue to cause irreparable harm to Plaintiff: infringing the Quarantine Love Work; counterfeited and infringed the Rojas Marks; engaged in unfair competition; and unfairly profited from such activities at Plaintiff's expense.

52.     Unless enjoined, Defendant will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Direct Federal Copyright Infringement)
### [17 U.S.C. § 501(A)]

53.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54.     Plaintiffs are the owners of the Quarantine Love Work.

55.    Defendants had actual notice of Plaintiffs' exclusive rights in and to the Quarantine Love Work.

56.    Defendants did not attempt and failed to obtain Plaintiffs' consent or authorization to use, reproduce, copy, display, prepare derivative works of, distribute, sell, and/or market Plaintiffs' Quarantine Love Work on or in connection with Infringing Products.

57.    Without permission, Defendants knowingly and intentionally reproduced, copied and displayed Plaintiffs' Quarantine Love Work by directly manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products, which bear Plaintiffs' Quarantine Love Work.

58.    Defendants' unlawful and willful actions alleged herein, constitute infringement of Plaintiffs' Quarantine Love Work, including, without limitation, Plaintiff's exclusive rights to reproduce, distribute and/or sell the same in violation of 17 U.S.C. § 501(a).

59.    As a direct and proximate result of Defendants' knowing and intentional copyright infringement alleged herein, Plaintiffs have suffered irreparable harm in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless enjoined, Defendant will continue to cause such irreparable harm, loss and damage to Plaintiffs.

60.    Based on Defendants' unlawful and infringing actions alleged herein, Plaintiffs are entitled to injunctive relief 17 U.S.C. § 502, Plaintiffs' actual damages and Defendants' profits in an amount to be proven at trial infringement pursuant to 17 U.S.C. § 504(b) or, at Plaintiffs' election, statutory damages pursuant to 17 U.S.C. § 504(c) and enhanced discretionary damages for willful copyright infringement, and reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

## SECOND CAUSE OF ACTION
### (Direct Trademark Counterfeiting)
### [15 U.S.C. §§ 1114(1)(b), 1116(d) and 1117(b)-(c)]

61.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

62.     Plaintiffs are the owner of all right and title in and to Plaintiffs' Rojas Marks.

63.     Plaintiffs have used continuously its Rojas Marks in interstate commerce since at least as early as the dates of first use reflected in its registrations, which are attached hereto as **Exhibit B**.

64.     Without Plaintiffs' authorization or consent, and with knowledge of Plaintiffs' well-known and prior rights in its Rojas Marks, and Plaintiffs' exclusive rights therein, and with knowledge that the Infringing Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or imitated the Rojas Marks and/or used spurious designations that are identical with, or substantially indistinguishable from, the Rojas Marks on or in connection with the manufacturing, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

65.     Defendants have manufactured, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products to the purchasing public in direct competition with Plaintiffs, and its authorized licensees, in or affecting interstate commerce, and/or has acted with reckless disregard of Plaintiffs' rights in and to the  Rojas Marks, through its participation in such activities.

66.     Defendants have applied its reproductions, counterfeits and copies of the Rojas Marks to promotions and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Infringing Products, which is likely to cause confusion, mistake and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive consumers, the public and the trade into believing that the Infringing Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which they are not entitled to in law or equity.

67.     Defendants unauthorized use of the Rojas Marks on or in connection with the Infringing Products was done with notice and with full knowledge that such use was not authorized or licensed by Plaintiffs, and with the deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Rojas Marks.

68.     Defendants' actions constitute willful counterfeiting of the Rojas Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

69.     As a direct and proximate result of Defendants' illegal actions as alleged herein, Defendants have caused monetary loss and irreparable injury and damage to Plaintiffs, its business, its reputation and its valuable rights in and to the Rojas Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have adequate remedy at law, and unless enjoined, Defendants will continue to cause such irreparable injury, loss and damage to Plaintiff.

70.     Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or an award of statutory damages per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (Direct Infringement of Registered Trademarks)
### [15 U.S.C. § 1114/Lanham Act § 32(a)]

71.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

72.     Plaintiffs are the owner of all right and title in and to Plaintiffs' Rojas Marks.

73.     Plaintiffs have continuously used its Rojas Marks in interstate commerce since at least as early as the dates of first use reflected in its registrations, which are attached hereto as **Exhibit B**.

74.     Plaintiffs, as the owner of all right, title and interest in and to Plaintiffs' Rojas Marks has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

75.     Defendants were, at the time it engaged in its actions as alleged herein, actually aware that Plaintiffs are the owners of the Rojas Marks.

76.     Defendants did not seek, and failed to obtain, consent or authorization from Plaintiffs to deal in and commercially manufacture, advertise, market, promote, distribute, display, offer for sale and/or sell Rojas Products and/or related products bearing the Rojas IP, including the Rojas Marks, into the stream of commerce.

77.     Defendants knowingly and intentionally manufactured, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products, bearing and/or utilizing marks that are reproductions, counterfeits and copies of the Rojas Marks and/or that are identical and/or confusingly similar to the Rojas Marks.

78.     Defendants knowingly and intentionally reproduced and copied the Rojas Marks and applied such reproductions, copies or colorable imitations to online listings and/or advertisements used in commerce upon or in connection with the manufacturing, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of the Infringing Products.

79.     Defendants' egregious and intentional use of the Rojas Marks in commerce on or in connection with the Infringing Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Infringing Products, and is likely to deceive the public into believing that the Infringing Products are genuine Rojas Products or are otherwise associated with, or authorized by, Plaintiffs.

80.     Defendants' actions have been deliberate and committed with full knowledge of Plaintiff's rights in and to the Rojas Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

81.      Defendants' continued, knowing and intentional use of the Rojas Marks without Plaintiffs' consent or authorization, constitutes intentional infringement of the Rojas Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

82.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Rojas Marks and the goodwill associated therewith in an amount as yet to be unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless enjoined, Defendants will continue to cause such irreparable injury, loss and damage to Plaintiffs.

83.     Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(False Designation of Origin & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

84.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

85.     Plaintiffs, as the sole owners of all right and title in to the Rojas IP, including, without limitation, the Rojas Marks, has standing to maintain an action for false designation of origin and unfair competition under the Lanham Act § 43(a), 15 U.S.C. § 1125.

86.      The Rojas Marks are inherently distinctive and/or have acquired distinctiveness.

87.     Defendants knowingly and willfully used in commerce product designs that are identical or confusingly or substantially similar to and constitute a reproduction of the Rojas IP, including the Rojas Marks, and affixed, applied and used false designations of origin and false

and misleading descriptions and representations on or in connection with the manufacturing, advertising, marketing, promotion, distribution, display, offering for sale, and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public to believe, in error, that Defendants' substandard Infringing Products are genuine Rojas Products or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved, endorsed or licensed by Plaintiffs, and/or that Defendants are affiliated, connected or associated with Plaintiffs, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Rojas IP, including the Rojas Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

88.     By manufacturing and/or assisting and encouraging third parties to manufacture and by itself advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products, that are identical to, confusingly similar to or colorable imitations of the Rojas IP, including the Rojas Marks, and using designs and/or marks that are identical and/or confusingly or substantially similar to, or which constitute colorable imitations of the Rojas IP, Defendant has traded off the extensive goodwill of Plaintiffs and its Rojas Products to induce and did induce, and intends to, and will continue to, induce customers to purchase its Infringing Products, thereby directly and unfairly competing with Plaintiffs. Such actions have permitted, and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which it has amassed through its nationwide marketing, advertising, sales and consumer recognition.

89.     Defendants knew or, by the exercise of reasonable care, should have known, that its adoption and commencement of and continuing use in commerce of designs and/or marks that are identical or confusingly and substantially similar to and constitute a reproduction of the Rojas IP would cause confusion, mistake, or deception among purchasers, users, the public and the trade.

90.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the trade and the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiffs, the Rojas Products and the Rojas IP.

91.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiffs by depriving Plaintiffs of sales of the Rojas Products and by depriving Plaintiffs of the value of the Rojas IP, including the Rojas Marks, as commercial assets, for which it has no adequate remedy at law, and unless restrained, Defendants will continue to cause irreparable injury to Plaintiffs and the goodwill and reputation associated with the value of the Rojas IP in an amount as yet unknown, but to be determined at trial.

92.     Based on Defendants' wrongful actions, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.      For an award of Plaintiffs' actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b) in an amount to be proven at trial for willful copyright infringement of Plaintiff's Rojas Love Work under 17 U.S.C. § 501(a);

B.      In the alternative to Plaintiffs' actual damages and Defendants' profits for copyright infringement of Plaintiffs' Rojas Love Work pursuant to 17 U.S.C. § 504(b), for statutory damages pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiffs may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally, directly and/or indirectly, using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

D.      In the alternative to Defendants' profits and Plaintiffs' actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services and/or for the willful encouragement, enabling, facilitation, participation in and/or material contribution to such use, an award of statutory damages pursuant to 15 U.S.C. § 1117(c) per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment.

E.      For an award of Defendants' profits and Plaintiffs' damages in an amount to be proven at trial for willful trademark infringement of the Rojas Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

F.      For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

G.      For a permanent injunction by this Court enjoining and prohibiting Defendants, or its agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

  i.      manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing Products;

  ii.      directly or indirectly infringing in any manner any of the copyrights, trademarks or other exclusive rights of Plaintiffs (whether now in existence or hereafter created) including, without limitation, the Rojas IP, Rojas Works and Rojas Marks;

  iii.      using any reproduction, counterfeit, copy or colorable imitation of the copyrights, trademarks or other exclusive rights of Plaintiffs (whether now in existence or hereafter created) including, without limitation, the

Rojas IP, Quarantine Love Work and Rojas Marks, to identify any goods or services not authorized by Plaintiffs;

iv.    using any of Plaintiffs copyrights, trademarks or other exclusive rights of Plaintiffs (whether now in existence or hereafter created) including, without limitation, the Quarantine Love Work or Rojas Marks, or any other designs,  artwork or marks that are substantially or confusingly similar to the Rojas  Quarantine Work or Rojas Marks on or in connection with Defendants' manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the Infringing Products;

v.    using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, or sold by Defendants with Plaintiffs, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, retailed, offered for sale, or sold by Defendants and Defendants' commercial activities by Plaintiffs;

vi.    engaging in the unlawful, unfair, or fraudulent business acts or practices, including, without limitation, the actions described herein, including the advertising and/or dealing in any Infringing Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

x.   instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ix) above; and

H.   For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from its manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing Products as described herein, including prejudgment interest.

I.   For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession that rightfully belong to Plaintiffs;

J.   For an award of exemplary or punitive damages in an amount to be determined by the Court;

K.   For Plaintiffs' reasonable attorneys' fees;

L.   For all costs of suit; and

M.   For such other and further relief as the Court may deem just and equitable

Dated: September 23, 2021                    Respectfully submitted,

                                             **VALENTE LLC**


                                             By: /s/ Lauren Valente
                                             Lauren Valente (LV0380)
                                             lauren@valente.law
                                             1121 Old Walt Whitman Rd., Suite 200
                                             Melville, NY 11747
                                             Telephone: (516) 384-4097
                                             *Attorneys for Plaintiffs*
                                             *Ruben Rojas, Inc.*
                                             *Ruben Rojas, Individually*